IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

AJA BROOKS-WILLIAMS,

    Plaintiff,

       v.                   CIVIL NO.: WDQ-15-559

KEYBANK, NATIONAL ASSOCIATION,
et al.,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Aja Brooks-Williams sued KeyBank, National Association ("KeyBank"), and others,[1] for violations of the Fair Credit Reporting Act ("FCRA")[2] and Maryland state law.[3]  ECF No. 27. Pending are KeyBank's motions to transfer the case to the U.S. District Court for the Northern District of Ohio, ECF No. 19, and to dismiss the state law claims, ECF No. 39, and Brooks-Williams motion for leave to present the Court with supplemental

---

[1] Brooks-Williams also sued Experian Information Services, Inc. ("Experian"), and American Education Services, A Division of the Pennsylvania Higher Education Assistance Agency ("AES"); however, those defendants have been voluntarily dismissed. *See* ECF Nos. 27, 32, 52.

[2] 15 U.S.C. § 1681, *et seq*. (2012) (counts two and three).

[3] Brooks-Williams alleges violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq*. (West 2010), and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 (count one).  She also alleges defamation (count four). *See* ECF No. 27.

authority, ECF No. 48, construed as a motion for leave to file a surreply.  No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the following reasons, KeyBank's motion to transfer will be granted; its motion to dismiss will be denied as moot. Leave will not be granted to Brooks-Williams to file a surreply.

I.   Background[4]

KeyBank is a nationally chartered bank with executive offices in Cleveland, Ohio.  ECF No. 27 ¶ 7.  From 1997 to 2011, Brooks-Williams resided in Cincinnati, Ohio, before relocating to Maryland.  *Id.* ¶ 6.

In "the mid-2000s," Brooks-Williams obtained "several private student loans," including some that were "later acquired by KeyBank."  *Id.* ¶¶ 15-16.  Those loans permitted Brooks-Williams and KeyBank to agree to a period of forbearance.  *Id.* ¶ 16.  In April 2011, Brooks-Williams applied for forbearance on her student loans serviced by AES, including those it serviced for KeyBank.  *Id.* ¶ 18.

---

[4] The facts are from the amended complaint and exhibits attached to the papers filed in connection with the motion to transfer. ECF Nos. 27, 19, 35, 45.  In reviewing a motion to transfer, the Court may consider evidence outside the pleadings.  *Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, No. 1:10CV140, 2010 WL 3719503, at *1 (W.D.N.C. Sept. 17, 2010).  However, Brooks-Williams's factual allegations are accepted as true and all reasonable inferences are drawn in her favor.  *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-CV-00043-MOC-DC, 2015 WL 2412467, at *6 (W.D.N.C. May 21, 2015); *Tharpe v. Lawidjaja*, No. 6:12-CV-00039, 2012 WL 5336208, at *1 (W.D. Va. Oct. 26, 2012).

From late July 2012 to October 2012, KeyBank, acting through AES, sought to collect on loans that were in forbearance by calling Brooks-Williams's family and employer. *Id.* ¶ 19. On August 7, 2012, KeyBank reported to Experian that Brooks-Williams's loans were past due or in default. *Id.* ¶ 23. On August 8, 2012, Brooks-Williams complained to KeyBank about "inaccurate information reported in her credit files." *Id.* ¶ 20. She also filed a complaint with the Consumer Financial Protection Bureau. *Id.* ¶ 21.

On August 16, 2012, KeyBank wrote to Brooks-Williams and stated that it "[was] committed to providing her with excellent service" in connection with her inquiries related to loans with account numbers in ending in 4001 and 9512. *Id.* ¶¶ 24, 26. On August 27, 2012, KeyBank's Compliance and Quality Control Manager, Eric Howe, identified the loans for which Brooks-Williams had applied for forbearance as those with account numbers ending in 4001, 9504, 9505, 9506, 9507, 9512, and 9515. *Id.* ¶ 18. Howe further stated that the loans with account numbers ending in 9512 and 9515 had been referred to an outside collection agency, but that it had "recalled" the loans from the collection agency. *Id.* ¶¶ 19, 27.

On September 13, 2012, Howe again wrote to Brooks-Williams, stating that she had three loans with KeyBank (those with

3

account numbers ending in 4001, 9512, and 9515[5]), for which she

had applied for forbearance.  *Id.* ¶ 28(a)-(b).[6]  However, her

forbearance applications had been "misplaced," and they were not

processed.  *Id.* ¶ 28(c).  For that reason, those loans "were

[improperly] charged-off for non-payment."  *Id.* ¶ 28(d).  Howe

---

[5] The amended complaint appears to contain a typographical error;
it states that Howe's letter referred to loans with account
numbers ending in "4001, 9512, and 9512."  ECF No. 27 ¶ 28(a).
The Court presumes that the last number should be "9515," which
Brooks-Williams has identified as a loan account improperly
submitted to a collection agency.  *See id.* ¶ 19.

[6] Brooks-Williams submitted three loan agreements that she
contends--but does not swear--KeyBank had sent with the
September 13, 2012 letter in connection with the misplaced
forbearance applications.  *See* ECF Nos. 35 at 4 (referring to
exhibits attached to her declaration as the loans for which
KeyBank stated that it had misplaced the forbearance
applications); 35-1 at 2 ¶ 5 (swearing that the September 13,
2012 letter referred to three loans for which KeyBank had
misplaced her forbearance application, but not swearing that the
three loan agreements attached as exhibits are the three loans
KeyBank sent her); 35-2, 35-3, 35-4 (the loan agreements).  The
three loan agreements submitted by Brooks-Williams contain
identical choice of law provisions calling for federal and Ohio
law; they do not contain forum selection clauses.  *See* ECF Nos.
35-2 at 4 ¶ L(1); 35-3 at 4 ¶ L(1); 35-4 at 4 ¶ L(1).  However,
those loans identify JPMorgan Chase Bank, N.A. ("JP Morgan
Chase")--not KeyBank--as the lender.  *See, e.g.*, ECF No. 35-2 at
2.  Brooks-Williams acknowledges that the three loan agreements
attached as exhibits to her affidavit do not have the same
account numbers as those referred to in the September 13, 2012
letter.  ECF No. 35 at 4 n.1.  According to KeyBank, it did not
acquire any of Brooks-Williams's debt from another bank.  ECF
No. 45 at 2.

promised to place the loans into forbearance, "reverse the
charge-offs," and correct its credit reporting. *Id*. ¶ 29.[7]

On May 15, 2014, KeyBank and AES "rereported to Experian"
that Brooks-Williams was delinquent or in default from October
2011 to December 2011. *Id*. ¶ 31.  Brooks-Williams alleges that
KeyBank's Risk/Compliance Analyst Rhonda Sorensen identified one
of those loans in a declaration attached to KeyBank's motion to
dismiss the original complaint. *Id*. ¶ 31 (*citing* ECF No. 21-2).
KeyBank has attached the same declaration to its motion to
transfer. *See* ECF No. 19-2 (First Sorenson Declaration).
Therein, Sorenson declares that the promissory note attached as
an exhibit to the declaration is "the loan agreement for the
LawAchiever Loan referenced in [Brooks-Williams's amended
complaint at paragraphs 31 to 40], the only loan that remained
in dispute following KeyBank's [September 13, 2012] letter to
[Brooks-Williams]." *Id*. at 3 ¶ 4.[8]  The LawAchiever Loan has a
choice of law clause providing for federal and Ohio law, and a
forum selection clause providing that "*any suit* I [Brooks-
Williams] bring against you . . . must be brought in a court . .
. in the county in which you [KeyBank] maintain your . . .

_____

[7] In the fall of 2012, KeyBank stopped calling Brooks-Williams's
family about her loans. *Id*.

[8] The LawAchiever Loan is a "Loan Program" under which several
loans can be made.  ECF No. 19-2 at 6 ¶ D(12)(v).  Its terms
govern any loans made pursuant to it. *Id*. at 6 ¶ D(13).

principal place of business." *Id.* at 8 ¶ O(5) (emphasis and alterations added).[9]

On July 18, 2014, Brooks-Williams wrote to Experian, with copies sent to KeyBank, to dispute the allegedly erroneous reporting. ECF No. 27 ¶ 33. On July 30, 2014, KeyBank wrote to

---

[9] The clause states in full that:

> I [Brooks-Williams] understand and agree that (i) you [KeyBank] are located in Ohio, (ii) that this Note will be entered into in Ohio[,] and (iii) that your decision on whether to lend me money will be made in Ohio. CONSEQUENTLY, THE PROVISIONS OF THIS NOTE WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES. I agree that any suit I bring against you (or against any subsequent holder of this Note) must be brought in a court of competent jurisdiction in the county in which you maintain your (or the county in which the subsequent holder maintains its) principal place of business.

*Id.* at 8 ¶ O(5) (alterations added). The LawAchiever Loan also had clauses providing for forbearance, and the "furnishing [of] complete and accurate information about credit accounts, including any Loan subject to the terms of this Note, to consumer reporting agencies." *Id.* at 7 ¶ I, 8 ¶ N.

Sorenson declares that all of Brooks-Williams's KeyBank undergraduate loans arise from its Key Alternative Loan Program, and all of her KeyBank law school loans arise from its LawAchiever Loan Program. ECF No. 45-1 at 3 ¶¶ 4-6 (Second Sorenson Declaration). The Key Alternative and LawAchiever Loans (together, the "KeyBank Loans") have identical choice of law, forum selection, and credit reporting clauses. ECF Nos. 19-2 at 8 ¶¶ N, (O)(5); 45-1 at 7 ¶ R(5), 9 ¶ Q. Like the LawAchiever Loan, the Key Alternative Loan also states that several loans may be made pursuant to its terms. ECF No. 45-1 at 6 ¶ B.

Brooks and stated that the disputed credit reporting was correct. *Id.* ¶ 36.[10]

On August 14, 2014, Brooks-Williams contacted KeyBank to discuss the July 30, 2014 letter, but it refused to do so. *Id.* ¶ 40.

On December 23, 2014, Brooks-Williams sued KeyBank and Experian in the Circuit Court for Anne Arundel County. ECF No. 2. On February 26, 2015, Experian removed the suit to this Court. ECF No. 1.[11]

On March 2, 2015, AES wrote to Brooks-Williams and stated that KeyBank had directed it "to remove the 10/11 and 11/11 negative credit reportings." ECF No. 27 ¶¶ 42-44.

On April 2, 2015, KeyBank moved to transfer the suit to the U.S. District Court for the Northern District of Ohio. ECF No. 19.[12] That day, KeyBank moved to dismiss the state law claims, and answered the federal claim. ECF Nos. 21, 22. On April 23,

---

[10] KeyBank's July 30, 2014 letter referred to credit reporting in connection with: "Loan Program: LWACVR; Current Owner: KeyBank, NA; 1st Disb[.] Date: 8/15/2005." ECF No. 27 ¶ 36. The acronym "LWACVR" appears to refer to the LawAchiever Loan, under which funds were to be disbursed on or around August 12, 2005. *See* ECF No. 19-2 at 5 (Part B(7)).

[11] This Court has federal question jurisdiction over the FCRA claim under 28 U.S.C. § 1331 (2012), and supplemental jurisdiction over the Maryland claims under 28 U.S.C. § 1367 (2012).

[12] On May 18, 2015, Brooks-Williams opposed the motion. ECF No. 35. On June 11, 2015, KeyBank replied. ECF No. 45.

2015, Brooks-Williams amended her complaint as of right.  ECF No. 27.[13]  On May 7, 2015, Brooks-Williams voluntarily dismissed all claims against Experian.  ECF No. 32.

On May 26, 2015, KeyBank moved to dismiss the state law claims in the amended complaint, and answered the federal claim. ECF No. 39, 40.  On June 12, 2015, Brooks-Williams opposed the motion.  ECF No. 46.  On June 29, 2015, KeyBank replied.  ECF No. 47.

On July 2, 2015, Brooks-Williams moved for leave to present the Court with supplemental authority.  ECF No. 48.  On July 7, 2015, KeyBank opposed the motion.  ECF No. 49.

On October 22, 2015, Brooks-Williams voluntarily dismissed all claims against AES.  ECF No. 52.

II.  Analysis

A.   Motion for Leave to File a Surreply

Unless otherwise ordered by the Court, a party generally may not file a surreply.  Local Rule 105.2(a) (D. Md. 2011). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.  *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004).

---

[13] The amended complaint also named AES as a defendant.  ECF No. 27-1 at 3.

Brooks-Williams seeks leave to present the Court with the Maryland Court of Appeals' decision in *Cunningham v. Feinberg*, 441 Md. 310, 107 A.3d 1194 (2015).  ECF No. 48.  Brooks-Williams contends that *Cunningham* is relevant to whether Maryland has a public policy sufficient to overcome the forum selection clause. *Id.* at 1-2.  However, *Cunningham* did not address the weight to be given Maryland's remedial state consumer laws in the presence of a forum selection clause; thus, it is not on point.  More importantly, *Cunningham* was decided on January 27, 2015, about six months before Brooks-Williams responded to KeyBank's motion to transfer.  Belated presentation of persuasive authority is not grounds for surreplies, which are generally disfavored in the District of Maryland.  *See Macena v. U.S. Citizenship & Immigration Servs.*, No. CV TDC-14-3464, 2015 WL 6738923, at *1 (D. Md. Nov. 2, 2015); *see also Key Tidewater Ventures LLC v. PNC Bank, N.A.*, No. CIV. JKB-14-2170, 2014 WL 5306716, at *5 (D. Md. Oct. 15, 2014) (surreply was impermissible when reply arguments were within the scope of the original motion). Brooks-Williams's motion will be denied.

B.   Motion to Transfer

KeyBank relies on the forum selection clause in the KeyBank Loans as the basis for transfer.  ECF Nos. 19 at 1; 19-1 at 1-2, 4-5; 45 at 4-5.  Accordingly, the Court must decide whether the

clause is valid and enforceable, and, if so, whether transfer is
merited.

      1.   Validity and Enforceability[14]

    Under federal law, mandatory forum selection clauses are
presumptively valid and "should be enforced unless enforcement
is shown by the resisting party to be unreasonable under the
circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.1,
10 (1972)); *see also Allen v. Lloyd's of London*, 94 F.3d 923
(4th Cir. 1996); *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852,
856 (D. Md. 2009) ("Only mandatory forum-selection clauses are
enforced under *The Bremen* standard"). Accordingly, the Court
must decide whether the forum selection clause is mandatory and
applicable to the claims in this suit, and, if so, whether
Brooks-Williams--as the party opposing its enforcement[15]--has
shown that enforcement would be unreasonable. *See Torres v. SOH*

---

[14] Because "[v]enue is a matter of procedural law, . . . federal
law applies." *Atl. Marine Const. Co. v. U.S. Dist. Court for W.
Dist. of Texas*, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487 (2013);
*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th
Cir. 2010).

[15] *See Atl. Marine Const. Co.*, 134 S. Ct. at 581 ("[A]s the party
defying the forum-selection clause, the plaintiff bears the
burden of establishing that transfer to the forum for which the
parties bargained is unwarranted."); *Beatgasm, LLC v. Punchkick
Interactive, Inc.*, No. 2:14CV611, 2015 WL 4394260, at *4 (E.D.
Va. June 25, 2015) ("The party opposing the forum selection
clause bears the burden of showing that the clause should not be
enforced.").

*Distribution Co.*, No. 3:10-CV-179, 2010 WL 1959248, at *2 (E.D. Va. May 13, 2010).

First, the forum selection clause in the KeyBank loans is mandatory. "A mandatory forum-selection clause is one containing clear language showing that jurisdiction is appropriate only in the designated forum." *TECH USA*, 592 F. Supp. 2d at 856 (internal quotation marks and citation omitted). Here, the forum selection clause states that "*any suit . . . must be brought* in a court . . . in the county in which you [KeyBank] maintain your . . . principal place of business." ECF Nos. 19-2 at 8 ¶ O(5); 45-1 at 7 ¶ R(5) (emphasis and alterations added). The term "must" is synonymous with "shall,"[16] which courts routinely find is indicative of mandatory forum selection clauses.[17] The "clear language" of the forum

---

[16] *See Montgomery v. RJ O'Brien & Associates, LLC*, No. CIV.A. 6:12-141-TMC, 2012 WL 3116504, at *4 (D.S.C. July 11, 2012) *report and recommendation adopted*, No. CA 6:12-141-TMC, 2012 WL 3116399 (D.S.C. July 31, 2012) (forum selection clauses stating that "any" dispute "shall" be litigated in Chicago, Illinois, were mandatory "because each requires, by clear language, that any dispute arising out of the commodity trading relationship must be litigated in Chicago").

[17] *See, e.g., Sterling Forest Associates, Ltd. v. Barnett-Range Corp.*, 840 F.2d 249, 252 (4th Cir. 1988) *abrogated on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989) ("Use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made.")(alteration and citation omitted); *Davis Media Grp., Inc. v. Best W. Int'l, Inc.*, 302 F. Supp. 2d 464, 468 (D. Md. 2004) (collecting cases holding that use of "shall" indicates mandatory intent, and finding same).

selection clause is unambiguous; Ohio--KeyBank's principal place
of business--is the mandatory forum.

Second, the forum selection clause applies to Brooks-
Williams's claims.  Though Brooks-Williams contends that the
forum selection clause does not apply because she has not sued
to enforce her student loan terms,[18] "[a] forum selection clause
is not axiomatically limited in scope to contract claims."[19]
Although the Fourth Circuit has not addressed whether, or in
what circumstances, forum selection clauses apply to non-
contractual claims, "[o]ther courts have addressed this same
question and held that they can."  *NC Contracting, Inc.* v.
*Munlake Contractors, Inc.*, No. 5:11-CV-766-FL, 2012 WL 5303295,
at *7 (E.D.N.C. Oct. 25, 2012).

To determine the scope of the forum selection clause, "the
[C]ourt 'looks to the language of the parties' contracts to

---

[18] ECF No. 35 at 1, 5-6. Brooks-Williams also contends that the
forum selection clause does not apply because her "claims . . .
relate to multiple student loans," several of which do not have
a forum selection clause.  ECF No. 35 at 1, 4.  In support,
Brooks-Williams relies on the JPMorgan Chase loans, *see id.* at
4; however, there is no indication that those loans are at issue
in this suit against KeyBank.  More importantly, however, the
terms of the KeyBank Loans--including the forum selection
clause--govern Brooks-Williams's undergraduate and law school
KeyBank loans.  ECF Nos. 19-2 at 6 ¶ D(13); 45-1 at 6 ¶ B.
There is no indication that Brooks-Williams has KeyBank loans
*not* subject to the terms of the LawAchiever and Key Alternative
Loans.  *See* ECF No. 45-1 at 3 ¶¶ 4-6.  Accordingly, Brooks-
Williams's argument is unavailing.

[19] *Perry v. AT & T Mobility LLC*, No. C 11-01488 SI, 2011 WL
4080625, at *3 (N.D. Cal. Sept. 12, 2011).

determine which causes of action are governed by the forum
selection clauses.'"  *Id.* at *6 (*quoting Marinechance Shipping,
Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).  When the
forum selection clause applies to "'[a]ny suit . . . arising out
of or in connection with' an agreement . . ., federal courts
have had no trouble finding statutory and tort claims 'arising
directly or indirectly from the relationship evidenced by the
contract.'"  *Vernon v. Stabach*, No. 13-62378-CIV, 2014 WL
1806861, at *4 (S.D. Fla. May 7, 2014) (*quoting Slater v. Energy
Servs. Grp. Int'l Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011))
(*citing Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d
Cir.1993) (securities fraud claims within scope of forum-
selection clause); *Oak Sys., Inc. v. Francotyp-Postalia, Inc.*,
No. 01-2794, 2002 U.S. Dist. LEXIS 2213 at *4-9, 2002 WL 442104
(E.D. Pa. Feb. 5, 2002) (civil conspiracy claim within scope of
forum-selection clause).

Here, the forum selection clause is significantly broader,
encompassing "any suit" between the parties.  ECF Nos. 19-2 at 8
¶ O(5); 45-1 at 7 ¶ R(5).[20]  Moreover, Brooks-Williams's claims

---

[20] Brooks-Williams contends that the forum selection clause
states that "the provisions of this Note will be governed by
federal laws and the laws of the state of Ohio," and is
ambiguous on whether the "provisions of this Note" include
Maryland remedial statutory claims. ECF No. 35 at 5.  Thus, she
argues, it should be construed against KeyBank as the drafter of
the KeyBank Loans.  *Id.*  Brooks-Williams appears to have
confused the choice of law and forum selection clauses.  The

arise from the KeyBank Loans that establish the parties'
relationship, and which provide for credit reporting.  ECF Nos.
19-2 at 8 ¶ N; 45-7 at 9 ¶ Q.  Accordingly, the forum selection
clause applies to Brooks-Williams's claims.  *See Slater*, 634
F.3d at 1331 (forum selection clause applied to federal and
state civil rights and whistleblower act claims); *Bense v.
Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir.
1982) (forum selection clause applied to federal antitrust
claim); *NC Contracting*, 2012 WL 5303295, at *6 (forum selection
clause applicable to "legal action" included noncontractual
claim); *Torres*, 2010 WL 1959248, at *1 (forum selection clause
applicable to "any disputes" between the parties including Fair
Labor Standards Act claim); *Exceptional Urgent Care Ctr. I, Inc.
v. Protomed Med. Mgmt. Corp.*, No. 508CV284-OC-10GRJ, 2009 WL
2151181, at *1 (M.D. Fla. July 13, 2009) (forum selection clause
applied to Florida's Deceptive and Unfair Trade Practices Act).

Finally, the forum selection clause is not unreasonable.
Unreasonableness may be found when: 1) the clause was induced by
fraud;[21] 2) the complaining party will be deprived of its day in

---

Court need not determine what law applies to her claims to
determine whether the forum selection clause contemplates those
claims.

[21] *See Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)
("Fraud and overreaching must be specific to a forum selection
clause in order to invalidate it.").

court because of the inconvenience or unfairness of the forum;
3) the fundamental unfairness of the chosen law may deprive the
plaintiff of a remedy; or 4) enforcement would contravene a
strong public policy of the forum state. *Albermarle Corp.*, 628
F.3d at 651; *Allen,* 94 F.3d 923 (summarizing *The Bremen*
standard).[22]

Here, there is no evidence of fraud.[23]  Though Brooks-
Williams argues that enforcement will result in her being
"deprived of her day in a *Maryland* court," ECF No. 35 at 2
(emphasis added), the inquiry is not whether she will be
deprived of her day in her *preferred* forum, but whether she will
be deprived of her day in *any* forum because of inconvenience or
unfairness, *see Albermarle Corp.*, 628 F.3d at 651.  Brooks-

---

[22] To the extent that the KeyBank Loans' choice of law provision
applies, and Sixth Circuit law governs the validity and
enforceability of the forum selection clause, the standard for
assessing the enforceability of the clause is the same. *See*
*Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 930 (6th
Cir. 2014) (*citing The Bremen* standard); *Wong v. PartyGaming*
*Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

[23] Brooks-Williams contends--without supporting authority--that
"the contract at issue here is [] adhesive" and she was unable
to "change or modify" the KeyBank Loans' terms.  ECF No. 35 at
8.  However, forum selection clauses may be enforced even when
they were not the product of arms-length negotiations between
parties with equal bargaining power.  *See Carnival Cruise Lines*,
499 U.S. at 595, 111 S. Ct. 1522 (enforcing a forum selection
clause on the back of a cruise ticket); *Smith*, 769 F.3d at 930;
*Fusha v. Delta Airlines, Inc.*, No. CIV.A. RDB-10-2571, 2011 WL
3849657, at *4 (D. Md. Aug. 30, 2011)("[D]isparity in bargaining
power does not render a forum selection clause fundamentally
unfair.").

15

Williams asserts--in a conclusionary fashion--that transfer "would work a serious inconvenience to [her] and her witnesses." ECF No. 35 at 8.  However, "[m]ere assertions of inconvenience or hardship" are insufficient to meet her burden.  *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002).  The party asserting witness inconvenience must submit affidavits from the witnesses "detailing" the hardships they would suffer in the transfer forum.  *Helsel v. Tishman Realty & Const. Co.*, 198 F.Supp.2d 710, 711 (D. Md. 2002).  Ohio is not the "remote alien forum" contemplated in *The Bremen*, which involved the selection of a London forum.  407 U.S. at 17, 92 S. Ct. 1907; *see also Carnival Cruise Lines*, 499 U.S. at 594, 111 S. Ct. 1522 (Florida not a "remote alien forum" to plaintiffs attempting to sue in Washington State).

Brooks-Williams argues that transfer "is tantamount [to accepting the argument] that [KeyBank] may voluntarily utilize and direct illegal and unfair and deceptive debt collection activities to a Maryland resident in violation of Maryland laws but be protected from those same remedial statutes."  ECF No. 35 at 6.  However, Brooks-Williams provides no authority for her apparent proposition that an Ohio court would decline to hear her Maryland claims, *cf. Exceptional Urgent Care Ctr. I*, 2009 WL 2151181, at *2 (transferring Florida statutory claims to the District of Maryland); nor does she demonstrate that, to the

16

extent the choice of law provision governs her claims, she lacks a remedy under Ohio consumer law.[24]

Additionally, Maryland law follows federal law in favoring enforcement of forum selection clauses, even when enforcement denies the plaintiff the opportunity to pursue a class action. *See Gilman v. Wheat, First Sec., Inc.*, 345 Md. 361, 378, 380-82, 692 A.2d 454, 462 (1997). Brooks-Williams has not provided--nor has the Court located--authority from any Maryland court refusing to enforce a forum selection clause because of the presence of MCPA and MCDCA claims. *Cf. Main Line Mech. of Virginia, Inc. v. Herman/Stewart Const. & Dev., Inc.*, No. RWT 11CV203, 2011 WL 3880462, at *4 (D. Md. Sept. 1, 2011) ("The Court fails to see how it can be a strong public policy of Maryland to enforce its statutory venue law in favor of a contractually negotiated forum selection clause when there is not a single Maryland case to support such a finding.").

Accordingly, the Court finds that the forum selection clause is valid and enforceable; it must decide whether transfer is merited.

---

[24] *See, e.g.*, Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann., § 1345.01, *et seq.* (West 2012) (governing unlawful conduct in connection with consumer transactions, including debt collection practices).

2.    Transfer

KeyBank moves to transfer the suit under 28 U.S.C.

§ 1404(a).   ECF No. 19 at 1.   Under 28 U.S.C. § 1404(a),[25] "[f]or

the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any

other district . . . where it might have been brought."[26]

Ordinarily, the Court must consider (1) the weight accorded

plaintiff's choice of venue, (2) witness convenience and access,

(3) convenience of the parties, and (4) the interest of justice.

*Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D. Md. 2008).

However, when--as here--there is a valid forum selection clause,

it should be "given controlling weight in all but the most

exceptional cases."   Atl. Marine Const. Co., 134 S. Ct. at 579

---

[25] This provision "was enacted to prevent the waste of time,
energy and money as well as to protect litigants, witnesses and
the public against unnecessary inconvenience and expense."
*Dicken v. United States*, 862 F.Supp. 91, 92 (D. Md. 1994)
(*citing Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11
L.Ed.2d 945 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.
Ct. 544, 99 L.Ed. 789 (1955)).

[26] Transfer is proper when the transferee court is a proper venue
and has personal jurisdiction over the defendants. *Koh v.
Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 630 (E.D.Va.2003).   In
light of the forum selection clause, this suit could have been
brought in the Northern District of Ohio.   In a state, such as
Ohio, which has more than one judicial district, a corporate
defendant "resides" in any judicial district where its contacts
would be sufficient to subject it to personal jurisdiction if
the district were a separate state. 28 U.S.C. § 1391(c) (2006).
There is no dispute that the Northern District of Ohio, located
in Cleveland, Ohio, has jurisdiction over KeyBank, which is
headquartered in that city.   ECF No. 27 ¶ 7.

(*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108
S. Ct. 2239, 101 L.Ed.2d 22 (1988)(Kennedy, J., concurring)).
In such circumstances, the Court's analysis changes in three
ways: "(1) 'the plaintiff's choice of forum merits no weight;'
(2) the Court is not to 'consider arguments about the parties'
private interests;' and (3) a 'transfer of venue will not carry
with it the original venue's choice-of-law rules [.]'" *Kettler
Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 845 (E.D.
Va. 2014) (*quoting Atl. Marine Const. Co.*, 134 S. Ct. at 581-
82).[27] The Court must only consider the public interest factors,
which "include the administrative difficulties flowing from
court congestion;[28] the local interest in having localized
controversies decided at home; [and] the interest in having the
trial of a diversity case in a forum that is at home with the
law." *AIG Europe Ltd. v. Gen. Sys., Inc.*, No. CIV.A. RDB-13-
0216, 2013 WL 6654382, at *4 (D. Md. Dec. 16, 2013) (*quoting
Atl. Marine Const. Co.*, 134 S. Ct. at 581 n.6). Brooks-Williams
has the burden of proving why the Court should not transfer the

---

[27] "When parties agree to a forum-selection clause, they waive
the right to challenge the preselected forum as inconvenient or
less convenient for themselves or their witnesses, or for their
pursuit of the litigation. A court accordingly must deem the
private-interest factors to weigh entirely in favor of the
preselected forum." *Atl. Marine Const. Co.*, 134 S. Ct. at 582.

[28] Neither party has addressed this factor.

suit to the agreed-upon forum. *See Atl. Marine Const. Co.*, 134 S. Ct. at 582.

As to the public interest factors, Brooks-Williams contends that Maryland has an interest in deciding this controversy because she sustained her alleged damages in this state (and the District of Columbia). ECF No. 35 at 7. However, Ohio has an interest in deciding a controversy involving a corporate defendant located there, particularly when the parties entered into the KeyBank Loans in Ohio, and Brooks-Williams used those loans to attend Ohio schools. *See* ECF No. 27 ¶¶ 6, 7, 15-16. Although the parties disagree about what state's law governs Brooks-Williams's state law claims,[29] the Court need not resolve that issue. Even assuming that Maryland law applies, it does not mean that Brooks-Williams's case is an "exceptional" one meriting abandonment of the forum selection clause; courts routinely transfer suits alleging state law claims to courts in other states.[30] Without more, the Court must afford the forum

---

[29] *Compare* ECF No. 35 at 7 (Maryland law applies), *with* ECF No. 19-1 at 7 (federal and Ohio law governs).

[30] *See, e.g., Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1049 (D. Minn. 2015) (transferring suit alleging violations of Minnesota law to the Southern District of Indiana); *Ajax Holdings, LLC v. Comet Cleaners Franchise Grp., LLC*, No. 4:15CV00494 SWW, 2015 WL 5898310, at *4 (E.D. Ark. Oct. 9, 2015)(transferring suit alleging violations of Arkansas law to the Northern District of Texas); *Exceptional Urgent Care Ctr. I*, 2009 WL 2151181, at *2 (transferring suit alleging violations of Florida law to the District of Maryland).

selection clause its "controlling weight." *Atl. Marine Const. Co.*, 134 S. Ct. at 579. Accordingly, KeyBank's motion to transfer the suit to the Northern District of Ohio will be granted.

III. Conclusion

For the reasons stated above, KeyBank's motion to transfer will be granted; its motion to dismiss will be denied as moot. Leave will not be granted to Brooks-Williams to file a surreply. This suit will be transferred to the United States District Court for the Northern District of Ohio.

12/17/15
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

21